Gaston, Judge.
 

 It is essential to the security of property and the repose of society, that the rules by which judicial sales are regulated, should be clearly defined and strictly observed. He who sets up title under such an alienation, cannot invoke the aid of the law, if it be made inconsistent with the requirements of the law. The sale made of the land in controversy by the'former sheriff, and the deed in pursuance thereof, transferred no estate unless such ex-sheriff had authority to sell. We cannot for a moment admit that he derived such authority from the writ of
 
 venditioni exponas
 
 directed to his successor. Whatever power was granted by that writ, was granted to
 
 him
 
 to whom it was directed. If the former sheriff could assert this power, every one in the land might equally assert it. This cannot be. The exercise of the power by a stranger to the writ is an act of usurpation.
 

 The defendant, therefore, is necessarily driven to contend, that the ex-sheriff had a right to sell, without any mandate from the court, because of the levy he had made, under the
 
 fieri facias.
 
 This ground, however, cannot be maintained, without overturning the most express and authoritative adjudication. In the case of
 
 Doe ex dem. Barden
 
 v.
 
 M'Kinnie,
 
 4 Hawks, 279, it was.
 
 *92
 
 decided by this court, that a sale of land by the sheriff, after a return of
 
 fi. fa.
 
 and without a new writ, is made without authority, and passes no title. In
 
 Seawell
 
 v.
 
 Bank of Cape of Fear,
 
 3 Dev. Rep. 279, this court, upon solemn argument, reaffirmed the same doctrine, in the most explicit terms. It has been argued, however, that these adjudications are repugnant to those in
 
 Governor
 
 v.
 
 Eastwood,
 
 1 Dev. Rep. 157; and
 
 Saunderson v. Rogers,
 
 3 Dev. Rep. 38; and that in this conflict of authority we are at liberty to settle the question upon principle. But on examination, it will be clearly seen, that the decisions in all the cases are reconeileable with each other, and that all authority is against the position which the defendant endeavours to maintain. In
 
 The Governor
 
 v.
 
 Eastwood,
 
 it appears that the relators, the executors of Holliday, had recovered three several judgments against Brand, amounting in the whole to three hundred dollars; that the sheriff had levied the executions issued on these judgments on certain negroes, as well as on the land of Brand, and returned no sale for want of bidders; that afterwards, without any
 
 venditioni,
 
 or other execution in his hands in behalf of the relators, he sold the negroes for fifteen hundred dollars, and the land for the like sum; that he retained in his hands money to satisfy the judgments of the relators, “ and other demands” against Brand, and paid over to Brand the residue. There was no pretence that these “ other demands,” or any of them, had a preferable claim to satisfaction over the executions of the relators. Without regard, therefore, to the money received as the price of the land, he had made out of the negroes seized upon these executions a sum more than sufficient to discharge them; and this amount was raised by a sale consummating his levy under the executions. In
 
 Sanderson
 
 v.
 
 Rogers,
 
 it is apparent, that the property upon which the levy was made consisted of chattels which had been
 
 seized
 
 by the former sheriff. A
 
 venditioni
 
 issued to the new sheriff, who required from the defendant in execution, and by threats of seizing those chattels, extorted from him,
 
 ajforthcoming bond.
 
 It was held, that the writ of
 
 venditioni
 
 conferred no authority to seize; that 'it
 
 *93
 
 improperly issued to the new sheriff to compel him to sell what had been seized by his predecessor: that a
 
 vendi-tioni
 
 is predicated upon the
 
 effects
 
 being in the hands of the officer to whom it is directed : that a levy under a
 
 fieri fiacias
 
 vests a property in the sheriff who seizes, which satisfies the débts, and makes the sheriff liable: that therefore he may sell after the return of the writ, and after his office had expired : and that upon his death, the property vests in his
 
 executors,
 
 who become responsible for the debt, and may sell the
 
 chattels.
 
 The whole of the doctrine so far asserted in the two last cited cases is in perfect conformity with that which was recognized in the others. In
 
 these
 
 it was held, that a seizure of chattels under
 
 afi.fa.
 
 did vest a
 
 property
 
 in the sheriff by virtue of which he could assert an action founded on the right of property, became charged to the plaintiff for the value of the goods seized, and discharged the debtor to the same amount; but it was also held, that from the essential difference in the nature of the property, the operation of a
 
 fi. fa levied
 
 upon
 
 lands
 
 must be different; for that under such a levy the sheriff takes no possession, acquires no property, does not become liable for the value, nor discharges the defendant to that or to any amount. In consequence of the special
 
 property
 
 acquired in the goods by
 
 seizure,
 
 he could sell without any further command; but as he acquired
 
 no property
 
 by a levy on land, and as the
 
 power
 
 to sell conferred by the
 
 fi. fa.
 
 expired by its own limitation, he could not, after the return term, sell land, unless a new authority was granted for that purpose.
 

 This distinction, thus recognized and settled, between the operation of a seizure of goods, and of a levy upon land under a
 
 fi. fa.,
 
 we should hold ourselves bound to consider as a part of the law of the land, even if we disapproved of the reasoning upon which it was established ; but what is there in that reasoning inconsistent with legal principles? It cannot be denied, although lands as well as chattels are with us liable to be sold on a
 
 fi. fa.,
 
 but that the law directing the sale of these two species of property
 
 must,
 
 in some respects, be so moulded, and in
 
 *94
 
 many has been so moulded, in its application to them, as to be suited to their characteristic distinctions. Thus it was held, and no one doubts that it was properly held, in an early period of our jurisprudence, that since the statute of 5th George the Second, the same distinction exists between real and personal property as before, and that lands descended to an heir are not liable to be sold on a judgment against the executor of the debtor.
 
 Baker
 
 v.
 
 Webb,
 
 1 Hay. Rep. 71. It is clear law, that a mere levy on lands does not in any manner divest either the property or possession of the debtor. This principle was recognized by all the court in the case of
 
 Frost et uxor
 
 v.
 
 Etheridge,
 
 1 Dev. Rep. 30, and a majority of the judges held that even a sale under that levy should not relate back to the levy, so as to divest the freehold against the widow’s claim to dower. We have ourselves recently declared the principle
 
 in extenso
 
 in
 
 The State
 
 v.
 
 Greenlee,
 
 4 Dev. Rep. 150. As the sheriff, then, takes no possession, nor acquires any property by a levy on lands, assuredly he cannot maintain either ejectment or trespass in regard to them, while it is certain that he may bring either trespass, detinue, or trover, after a seizure of chattels. It would be at variance with all legal analogies to hold that a man was dive.sted of his freehold by a mere indorsation on a
 
 ft. fa.
 
 of a levy upon his land of which he cannot be presumed to know any thing until it is returned
 
 ;
 
 but the
 
 taking
 
 of his chattels is a notorious act, of which he can scarcely be ignorant. Besides, if a levy on lands passed any property to the sheriff, it must be a
 
 freehold
 
 estate, which upon his death would descend to his heir, and could not go to his executors, as is the case with goods that have been taken in execution. Rightly, therefore, does it seems to us, has it been established by our predecessors, that while a seizure of goods vests a special property in the sheriff, so that he needs no authority to sell, a levy on land vests no property, and under that levy he cannot sell after his authority is at an end, unless it be renewed. The levy operates as a
 
 lien
 
 which sets apart the land levied upon for the satisfaction of the creditor’s judgment, and by virtue of this lien he may by proper
 
 *95
 
 process cause the land to be applied to that purpose as against the debtor, or his alienee, or his representatives, or his creditors whose liens subsequently attach. By allowing to it this operation, efficacy is given to the enactments of the statute; while by denying to it the effect of divesting the possession or property of the- debtor, the settled distinctions between real and personal estate are upheld, proper regard is shown to the different modes pursued in making a seizure of goods, and a levy on lands, and much injustice, oppression and confusion are prevented. We deem it not amiss to add, that the distinctions on which we have commented, are, indeed, most striking between lands and
 
 personal
 
 chattels, while chattels
 
 real
 
 seem to hold an intermediate grade between these two species of property: yet the latter belong to the general class of
 
 personal property,
 
 are (in the language of the Court of King’s Bench in
 
 Scott
 
 v.
 
 Scholey,
 
 8 East, 484,) of a tangible nature, capable of manual seizure, of a transfer of possession, and of a detention in the sheriff’s hands: and when so taken under a
 
 fi. fia.,
 
 a property therein vests in the sheriff, which enables him to make a sale without a
 
 venditioni,
 
 or after he is out of office, and which, on his death, passes to his personal representative.
 
 Scanes
 
 v.
 
 Wilkins,
 
 1 Ves. 195.
 
 Doe ex dem Stevens
 
 v.
 
 Douston,
 
 1 Barn. & Ald. 230. Whether a levy on a chattel real would be good for
 
 any
 
 purpose, without an actual taking or some notorious act equivalent thereto, or if effectual so far as to operate a lien, whether it would transfer any
 
 property
 
 to the sheriff, are questions which have not been discussed, and are not necessarily now under examination, and which may deserve serious consideration.
 

 A question has been much discussed at the bar, on which we might forbear to express an opinion, as the decision of that question is not necessary to the determi-nátion of this case; but as it involves an inquiry respecting the proper forms of judicial process, which ought to be the same throughout the state, and as a difference of opinion in regard thereto seems to have been entertained among our predecessors, we avail ourselves of this oppor
 
 *96
 
 tunity to effect, as far as we can, uniformity of practice. In the case of
 
 The Governor
 
 v.
 
 Eastwood,
 
 Judge Hall intimates, that when a levy has been made on land, and the sheriff who made the levy is out of office, the
 
 vendi-tioni
 
 should be directed to
 
 him,
 
 because he commenced the execution, and ought to finish it. In the case of
 
 Seawell
 
 v.
 
 Bank of Cape Fear,
 
 Chief Justice Henderson expressed a decided opinion that it ought to be directed to his successor, and states as a fact, that such has been the universal usage. If we were sure that either practice had been uniformly observed, we should not be disposed to change it, however it might have been settled. We are satisfied, however, that this has not been the case. It will be understood, that we do not mean to intimate an opinion, that a sale under a
 
 venditioni
 
 may not confer a good title, when made by him to whom it was directed, whether he be the sheriff who made the levy, or his successor; but it seems to us most expedient and consistent with legal usage, that where a writ issues giving authority either over the person or property of the citizen, it should be directed to the officer of the court, whose obedience can be most effectually commanded, and whose disobedience or neglect of duty can be most effectually visited. Where there has been a levy on land only, there is no reason why the
 
 venditioni
 
 should not be directed to the new sheriff. There may be in some respects a convenience, where there has been a levy both on goods and land, and the goods remain unsold, in addressing the
 
 venditioni
 
 to the old sheriff: but this convenience is not sufficient, in our judgment, to overrule the irregularity of such a course, and the many inconveniences which may result from it. In such a case, if the goods have been delivered over to the new sheriff, or he can obtain them from the old sheriff, we see no impropriety in a general
 
 venditioni
 
 to the new sheriff. If the goods cannot be had by him, a
 
 distringas
 
 to the new sheriff to compel the old sheriff to sell the goods will be the appropriate process, to which may be added a special
 
 venditioni,
 
 in case the moneys thereby raised be not sufficient to satisfy the judgment, authorizing the new sheriff to sell the land — or, if the plaintiff
 
 *97
 
 chooses to
 
 waive
 
 the
 
 levy,
 
 a special
 
 ft. fa.
 
 to the new sheriff for the residue. The modifications here suggested become necessary to carry into effect our statutory provisions, by which personal property is to be first applied to the satisfaction of debts. Should it afterwards appear, either by return of the
 
 distringas,
 
 or by suggestions of record, that the goods have been eloigned by the defendant, and the plaintiff desires any further remedy against him, it seems to us, that on a
 
 scire facias
 
 to show cause why this remedy may not be had, the court may direct such process against the defendant or his property, as shall fully meet the exigencies of the case. '
 

 Per Curiam. Judgment affirmed.